978 F.2d 1260
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Thomas D. VAYKO, Defendant-Appellant.
 No. 92-1189.
 United States Court of Appeals, Sixth Circuit.
 Oct. 22, 1992.
 
 Before RYAN and SUHRHEINRICH, Circuit Judges, and ENGEL, Senior Circuit Judge.
 RYAN, Circuit Judge.
 
 
 1
 Defendant Thomas Vayko appeals the sentence he received after pleading guilty to one count of transferring an illegal firearm, 26 U.S.C. §§ 5812, 5861(e), and one count of distributing marijuana, 21 U.S.C. § 841(a)(1). His appeal raises one issue:
 
 
 2
 Whether the district court clearly erred in enhancing Vayko's base offense level by four levels pursuant to § 2K2.1(b)(1)(D).
 
 
 3
 We conclude that it did not, and affirm.
 
 I.
 
 4
 In September 1991, a federal grand jury returned a six-count indictment against Thomas Vayko on various firearms and drug-related charges. In November 1991, Vayko entered a plea of guilty to two counts--transfer of an illegal firearm and distribution of marijuana--and the government dismissed the remaining four counts, including a count of illegal possession of twelve firearms. The Rule 11 plea agreement recommended a base offense level of 18, with a two-level downward adjustment for acceptance of responsibility, for an offense level total of 16 and a sentencing guideline range of 21 to 27 months' confinement. The agreement specified, however, that "[t]he court may accept or reject the position of the parties" as to the correct sentencing range, and "the court may consider conduct alleged in [the] dismissed counts in arriving at the appropriate sentence."
 
 
 5
 The presentence report recommended an additional four-level increase because of special offense characteristics pursuant to U.S.S.G. § 2K2.1(b)(1)(D), which provides for a four-level increase if an offense involved 13 to 24 firearms. This brought the total offense level to 20, for a sentencing range of 33 to 41 months' confinement. The bases for the four-level enhancement were Vayko's statements to an undercover officer that he could provide other weapons and that he had sold machine guns to someone in California in exchange for cocaine, as well as the discovery of 13 firearms in Vayko's house at the time of his arrest.
 
 
 6
 At the sentencing hearing in January 1992, Vayko objected to the four-level increase, but did not object to the statement of the underlying facts in the offense conduct section of the report. The court applied the four-level enhancement as relevant conduct, finding that the additional firearms were part of a common scheme and plan of illegal distribution. Vayko was sentenced to 36 months' imprisonment, and has timely appealed.
 
 II.
 
 7
 Appellate review of sentences under the guidelines is governed by the due deference standard, and the appropriate standard of review varies depending on whether an issue is factual, legal, or mixed. United States v. Carroll, 893 F.2d 1502, 1505-06 (6th Cir.1990). We review a district court's findings of fact underlying the application of a guideline provision for clear error. 18 U.S.C. § 3742(e); see also United States v. Perez, 871 F.2d 45, 47-48 (6th Cir.), cert. denied, 492 U.S. 910 (1989). While giving due deference to the district court' application of the guidelines to those facts, 18 U.S.C. § 3742(e), we render de novo review of the district court's legal conclusions. United States v. Garner, 940 F.2d 172, 174 (6th Cir.1991).
 
 
 8
 Defendant argues that the district court applied the incorrect version of the guidelines to his offense. Vayko committed the offense in May 1991; the guidelines were amended in November 1991; and Vayko was sentenced in January 1992. It is undisputed that the district court sentenced Vayko under the amended guidelines in effect at the time of the sentencing.
 
 
 9
 Although the statute authorizing the guidelines directs the district court to apply the guidelines in effect at the time of sentencing, 18 U.S.C. § 3553(a)(4), the Supreme Court made clear in Miller v. Florida, 482 U.S. 423 (1987), that if an amended provision of the guidelines results in a higher sentencing range, the defendant is entitled to the benefit of the guidelines provision in effect at the time the offense was committed. Otherwise, sentencing would run afoul of the ex post facto clause by creating an "increase[d] punishment beyond what was prescribed when the crime was consummated." Id. at 430 (quoting Weaver v. Graham, 450 U.S. 24, 30 (1981)). In deciding whether the amended guideline under which Vayko was sentenced violates the ex post facto prohibition, we must determine whether its application disadvantages Vayko, and also whether that disadvantage is one that alters "substantial personal rights," or whether it "merely changes 'modes of procedure which do not affect matters of substance.' " Miller, 482 U.S. at 430 (quoting Dobbert v. Florida, 432 U.S. 282, 293 (1977)).
 
 
 10
 Before November 1, 1991, § 2K2.2(b)(1) read:
 
 
 11
 If the offense involved distribution of a firearm, or possession with intent to distribute, and the number of firearms unlawfully distributed, or to be distributed, exceeded two, increase as follows:
 
 
 12
 ...
 
 
 13
 (D) 13"24 add 4
 
 
 14
 (Emphasis added). It was then amended through consolidation with two other sections, and § 2K2.1(b) now reads as follows:
 
 
 15
 If the offense involved three or more firearms, increase as follows:
 
 
 16
 ...
 
 
 17
 (D) 13"24 add 4
 
 
 18
 Application Note 9 to the current version of § 2K2.1 reads:
 
 
 19
 For purposes of calculating the number of firearms under subsection (b)(1), count only those firearms that were unlawfully sought to be obtained, unlawfully possessed, or unlawfully distributed....
 
 
 20
 Vayko argues that the amendment works a substantial change, because the earlier guidelines required the government to demonstrate that the weapons were not merely illegally possessed, but possessed for the purpose of distribution; the new guidelines, he argues, require only a showing that the weapons were possessed. Although the pre- and post-November 1, 1991 versions are substantially the same when the Application Note is taken into account, we think that Vayko is correct that the 1991 amendment added firearms "unlawfully sought to be obtained" or "unlawfully possessed" to the specific offense characteristics, while before only firearms that were unlawfully distributed or possessed with that intention were included.[1]
 
 
 21
 We need not consider whether this amendment has altered substantial personal rights, however, because even if there were a substantive change, it did not disadvantage Vayko. Section 1B1.3 provides that the district court may rely on the entire range of relevant conduct in making a determination of specific offense characteristics. See United States v. Ykema, 887 F.2d 697 (6th Cir.1989). The district court found that the additional firearms were part of a common scheme or plan to distribute marijuana, and that Vayko used the guns to protect his drug trafficking activities as well as for the purpose of trafficking in illegal weapons. Facts in the presentence report that support the district court's finding of fact are that Vayko sold a sawed-off rifle to an undercover officer and represented that more guns were available, along with marijuana and cocaine; that he sold marijuana to an officer and indicated that it had come from a larger supply; that he agreed to sell marijuana to an officer on another date; that ten grams of marijuana, a loaded gun, a triple-beam scale, 4000 rounds of ammunition, and 12 guns were found in a search of his house; that Vayko possessed an UZI converted to full automatic fire and a firearm silencer that could be fitted to the UZI, and he told the undercover officers that he constructed the silencer on his own; that he told the officers he had a supplier of crack cocaine and marijuana in Pontiac, Michigan, and that he would always carry a gun in his vehicle when purchasing narcotics from his supplier; and that Vayko admitted that he had sold two UZIs to a man in California in exchange for cocaine. Vayko has not objected to the statement of the facts in the offense conduct section of the presentence report.
 
 
 22
 The district court's finding of fact that Vayko was engaged in a common scheme or plan to distribute firearms must be affirmed by this court unless it is clearly erroneous. Vayko has not claimed that the district court's finding of fact was clearly erroneous, and the record shows that it is not. This finding supports the district court's decision to enhance the offense level by four levels pursuant to § 2K2.1(b). Therefore, even if the 1990 version of that section required the government to prove that the weapons were possessed with an intention of unlawful distribution, Vayko is not disadvantaged by the change since there is ample evidence to support the district court's finding that Vayko possessed the firearms for unlawful distribution.
 
 III.
 
 23
 Vayko's sentence is AFFIRMED.
 
 
 
 [1]
 Vayko also points to language in the commentary following the amendment that reads: "This amendment consolidates three firearms guidelines and revises the adjustments and offense levels to more adequately reflect the seriousness of such conduct...." This language, however, is not relevant to Vayko's case, because the offense level and adjustments for Vayko's crime remained the same: 18 and 4, respectively